UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                                          Case No. 23-16612-LMI

M.V.J. AUTO WORLD, INC.,                        Chapter 11

     Debtor.
_____/

**FIRST AMENDED PLAN OF REORGANIZATION OF M.V.J. AUTO WORLD, INC.**

**Submitted on February 20, 2024 by:**

LSS LAW
Attorneys for the Debtor
2699 Stirling Road, Suite C401
Ft. Lauderdale, Florida 33312
Telephone: (954) 920-5355
ZACH B. SHELOMITH, ESQ.
zbs@lss.law
Florida Bar No. 0122548
CHRISTIAN SOMODEVILLA, ESQ.
cs@lss.law
Florida Bar No. 59539

and

KINGCADE, GARCIA & MCMAKEN, P.A.
Attorneys for the Debtor
1370 Coral Way
Miami, Florida 33145
Telephone: (305) 285-9100
TIMOTHY S. KINGCADE, ESQ.
scanner@miamibankruptcy.com
Florida Bar No. 082309

# TABLE OF CONTENTS

**Article I – Summary and Background………………………..……………………3**

**Article II – Definitions…………………………………………………..………………..4**

Article III - Treatment of Administrative Expense Claims and Priority Tax Claims……….7

Article IV - Classification and Treatment of Claims and Interests Under the Plan………..…7

Article V – Allowance and Disallowance of Claims…………………………………….…..10

Article VI – Provisions for Executory Contracts and Unexpired Leases……………………10

Article VII – Means for Implementation of the Plan………………………………….…10

Article VIII – Discharge and Effect of Confirmation…………………………………...…….11

Article IX – Other Provisions…………………………………………………………………..11

## EXHIBITS

**Exhibit "A" – Liquidation Analysis**

**Exhibit "B" – Projected Financial Information**

**Exhibit "C" – List of Creditors to be Paid Pursuant to the Plan**

# ARTICLE I
# SUMMARY AND BACKGROUND

1.01    Introduction.  This is the First Amended Plan of Reorganization (the "Plan") under Subchapter V of Chapter 11 of the Bankruptcy Code of M.V.J. Auto World, Inc. (the "Debtor"). Creditors will receive payment from the Debtor from the cash flow of the Debtor's operations, as well as from the sale or refinance of real property owned by the Debtor, which shall take place on or before December 31, 2025.

This Plan provides for 1 class of priority claims, 3 classes of secured claims, 1 class of non-priority unsecured claims and 1 class of equity security holders.  General unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued at approximately 100 cents on the dollar.  This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Article IV of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one.  (If you do not have an attorney, you may wish to consult one.)**

1.02    Description and History of the Debtor's Business.  The Debtor operates an automobile repair shop and is a neighborhood U-Haul dealership.  The Debtor is owned by Jose Barcelo, who has owned the Debtor since it was formed in 2006.  The Debtor operates from and owns the real property located at 11750 NW 87 Pl, Bays # 7 – 8, Hialeah Gardens, FL 33018 (the "Real Property").

Due to a variety of factors, including without limitation, a general downturn in business revenue, the Debtor has been unable to service its secured debt.  Specifically, the first mortgage on the Real Property, in favor of Ocean Bank, a Florida Banking Corporation ("Ocean Bank"), matured several months prior to the Petition Date.  While the Debtor has acknowledged that Ocean Bank has a fully secured first priority lien against the Real Property, it disagrees with the amount due on the Petition Date.  The Debtor intends to pay the full amount of Ocean Bank's Allowed Secured Claim on or before December 31, 2025.

The Debtor is also indebted to the United States Small Business Administration (the "SBA").  The Debtor intends to pay the SBA the full amount of its Allowed Secured Claim on or before December 31, 2025.

The Debtor has estimated that the total number of scheduled and filed general unsecured claims is $662.39.  The Debtor will be paying all such claims in full on the First Payment Date. By this Plan, the Debtor will be restructuring all of the above obligations so that the Debtor can remain viable as a going concern.

1.03    Liquidation Analysis.  To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.  A liquidation analysis is attached to the Plan as **Exhibit "A"**.

The estimated distribution in a hypothetical Chapter 7 was determined by analyzing the liquidation value of the Debtor's property.  Given the value of the Debtor's property, all creditors

will receive a 100% distribution, which is equal to what creditors would receive in a hypothetical Chapter 7 proceeding.

1.04    Ability to Make Future Plan Payments. The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate its business. To that end, the Debtor has attached projected financial information as **Exhibit "B"**. The final Plan payment is expected to be paid on December 31, 2025. **You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

1.05    Projected Recovery of Avoidable Transfers. The Debtor has analyzed its books and records and does not believe that any avoidable transfers exist that would generate a recovery for the bankruptcy estate. As such, the Debtor does not intend to pursue preference, fraudulent conveyance or other avoidable actions under Chapter 5 of the Bankruptcy Code.

1.04    Confirmation Requirements and Procedures. To be confirmable, the Plan must meet the requirements listed in 11 U.S.C. §§ 1191(a) or (b). These include the requirements that: the Plan must be proposed in good faith; the Plan must distribute to each creditor at least as much as the creditor would receive in a Chapter 7 liquidation case, unless the creditor votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1191, and they are not the only requirements for confirmation.

Impaired creditors may vote to accept or reject the Plan. A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan; and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

Even if no impaired class(es) of creditors have accepted the Plan, the Court may nonetheless confirm the Plan if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims that are impaired under, and has not accepted, the Plan, pursuant to 11 U.S.C. § 1191(b). A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims if it meets all the requirements set forth in 11 U.S.C. § 1191(b).

*You should consult your own attorney if a "cramdown" confirmation will affect your claim, as the variations on this general rule are numerous and complex.*

## ARTICLE II
## DEFINITIONS

All capitalized terms in this Plan shall have the meanings ascribed to them herein. Any capitalized term used in this Plan that is not defined herein or elsewhere in this Plan shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.01    Administrative Claim - means any Claim constituting a cost or expense of administration of the above-referenced bankruptcy case under 11 U.S.C. § 503(b) and that is entitled to priority under 11 U.S.C. § 507(a), including, without limitation: (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the bankruptcy estate

and of operating the business of the Debtor; (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of business, (iii) compensation or reimbursement of expenses of professionals to the extent allowed by the 11 U.S.C. §§ 330(a) or 331, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a final order of the Bankruptcy Court.

2.02    <u>Allow, Allowed, Allowance (or words of similar meaning)</u> - mean with respect to a Claim or equity interest against the Debtor that is: (a) either (i) scheduled by the Debtor in its schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed, if a holder of such Claim has not filed a proof of claim with the Court within the applicable period of limitation fixed by the Court, or (ii) asserted in the above-referenced bankruptcy case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court, or (ii) that has otherwise been allowed by a Final Order or pursuant to the Plan.  An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of the Plan.

2.03    <u>Assets</u> - mean any and all property of the bankruptcy estate as defined under and included in 11 U.S.C. § 541(a), including without limitation, all legal or equitable pre-petition and post-petition interests of the Debtor in any and all real or personal property of any nature.

2.04    <u>Avoidance Actions</u> – means any and all actions and rights to recover or avoid transfers or to avoid any lien under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, 11 U.S.C. §§ 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553, and applicable state law, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code.

2.05    <u>Bankruptcy Code</u> - means Title 11 of the United States Code, which governs the Chapter 11 case of the Debtor.

2.06    <u>Bankruptcy Court or Court</u> – mean the United States Bankruptcy Court for the Southern District of Florida.

2.07    <u>Bankruptcy Rules</u> - means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

2.08    <u>Claim</u> - means any right to payment against the Debtor or right to an equitable remedy against the Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

2.09    <u>Claimant</u> – means the Holder of a Claim.

2.010    <u>Class</u> - means a group of Claims or Equity Interests described in Article IV of this Plan.

2.011   Confirmation Date - means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

2.012   Confirmation Order - means an Order of the Bankruptcy Court confirming the provisions of the Plan pursuant to 11 U.S.C. § 1191.

2.013   Confirmation Hearing - means the hearing at which the Bankruptcy Court confirms the Plan.

2.014   Disputed Claim - means any Claim designated as disputed, contingent or unliquidated in the Debtor's schedules filed in connection with the Chapter 11 case of the Debtor, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Order has been entered. Holders of Disputed Claims shall not be entitled to vote on the Plan, unless otherwise provided for in the Plan or ordered by the Court.

2.015   Distribution - means the distribution of cash or other property, as the case may be, in accordance with this Plan.

2.016   Distribution Address - means the address for a holder of an Allowed Claim as set forth in a proof of claim, as amended or supplemented. If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtors' Schedules.

2.017   Effective Date – means the date upon which the Confirmation Order becomes a Final Order.

2.018   Final Order - means an order or judgment of the Court, as entered on the docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under 11 U.S.C. § 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

2.019   First Payment Date – means the first day of the first month after the Effective Date of the Plan.

2.020   Holder - means the legal or beneficial Holder of a Claim or Equity Interest (and, when used in conjunction with a Class or type of Claim or Equity Interest, means a Holder of a Claim or Equity Interest in such Class or of such type).

2.021   Impaired - means an Allowed Claim that is impaired within the meaning of 11 U.S.C. § 1124.

2.022   Petition Date – means August 21, 2023.

2.023   Priority Claim - means a Claim entitled to priority under 11 U.S.C. §§ 507(a)(3) - (7).

  2.024 <u>Priority Tax Claim</u> - means a Claim entitled to priority under 11 U.S.C. § 507(a)(8).

  2.025 <u>Secured Claim</u> - means a Claim that is (i) secured by a valid and perfected lien on property in which the Debtor's estate has an interest, but only to the extent of the value of the claimant's interest in the estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a), or (b) subject to setoff under 11 U.S.C. § 553, but only to the extent of the amount subject to setoff, as determined pursuant to 11 U.S.C. § 553.

  2.026 <u>Subchapter V Trustee</u> – means the individual serving in this bankruptcy proceeding as trustee pursuant to 11 U.S.C. § 1183.

  2.027 <u>Undersecured Claim</u> - means the amount of a prepetition Secured Claim that exceeds the value of the collateral securing that Claim and is therefore unsecured.

  2.028 <u>Unsecured Claim</u> - means any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE
## CLAIMS AND PRIORITY TAX CLAIMS

  3.01 <u>Unclassified Claims</u>.  Under 11 U.S.C. § 1123(a)(1), administrative expense claims and priority tax claims (other than 11 U.S.C. § 507(a)(8) claims) are not in classes.  However, the treatment of any administrative expense claims that are not paid in full on the Effective Date of this Plan is set forth below.

  3.02 <u>Administrative Expense Claims</u>.  Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid as set forth herein, which is consistent with 11 U.S.C. § 1191(e).  If not otherwise specifically provided for herein, any other allowed administrative expense claims will be paid in full, plus statutory interest if applicable, no later than December 31, 2025.  Administrative Expense Claims shall be filed on or before the deadline as set by the Court or otherwise pursuant to the Bankruptcy Code.

  3.03 <u>Priority Tax Claims</u>.  Each holder of an allowed priority tax claim will be paid in full on the First Payment Date.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLAIMS AND
## INTERESTS UNDER THE PLAN

  4.01 Classified Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Priority Unsecured Claims<br><br>**Total priority claim amount(s): $388.89 (priority unsecured =** | Unimpaired | Class 1, Priority Unsecured Claims, are unimpaired by this Plan. Only one Priority Unsecured Claim has been filed, by the State of Florida – Department of Revenue, in the amount of $388.89.  This claim – to the extent not already satisfied by such date - will be paid in full, in a lump sum, on the First Payment Date. |

| | | |
|---|---|---|
| $388.89; general unsecured = $0.00) | | No other Priority Claims have been filed; and no other undisputed, noncontingent and/or liquidated Priority Claims have been scheduled by the Debtor. However, in the event that it is determined by the Court that any other allowed Priority Claims do exist, then each holder of a Class 1 Priority Claim will be paid in full, plus statutory interest if applicable, no later than December 31, 2025. |
| Class 2 – Secured Claim of Ocean Bank (First Priority Blanket Lien) (Claim # 2, 3 and 4) **Total alleged claim amount: $170,267.43 (secured = $170,267.43; general unsecured = $0.00) (Allowed Claim Amount to be determined by the Bankruptcy Court)** | Impaired | Class 2, the Secured Claim of Ocean Bank, is impaired by this Plan. Ocean Bank has a first priority blanket lien on essentially all assets of the Debtor, by virtue of a UCC-1 Financing Statement. Ocean Bank also has a first mortgage on the Debtor's Real Property. Ocean Bank's claim includes such allowed amounts for attorney's fees, costs and interest, pursuant to 11 U.S.C. § 506. Ocean Bank's claim is fully secured. |
| | | The Debtor objects to the amount of Ocean Bank's claim; specifically, the amount of default interest claimed by Ocean Bank. The Debtor is contemporaneously filing an Objection to Claim to address the limited issue of the amount of default interest. |
| | | The Debtor is currently paying a monthly adequate protection payment to Ocean Bank in the amount of $2,000.00 per month (the "Adequate Protection Payments"), due on or before the 15th day of each calendar month [see ECF No. 75]. The Debtor shall continue to pay Ocean Bank the amount of $2,000.00 per month (the "Interim Plan Payments"), due on or before the 15th day of each calendar month, beginning on the 15th day of the month following the date of the last Adequate Protection Payment remitted to Ocean Bank prior to the Confirmation Hearing, and shall continue to make such Interim Plan Payments until the date of the Final Plan Payment. |
| | | The Adequate Protection Payments and the Interim Plan Payments shall be applied to principal, interest and an escrow component for taxes and insurance, applied against an interest rate of 10.25% until the Final Plan Payment described below. |
| | | No later than December 31, 2025, the Debtor shall pay all remaining indebtedness to Ocean Bank (the "Final Plan Payment"), including without limitation, any unpaid principal, accrued interest and Attorneys' Fees and Costs, through either the sale or refinance of the Debtor's Real Property. The Debtor may pre-pay such amount without penalty. |
| | | Ocean Bank will retain its lien on the Debtor's assets, including without limitation, the Real Property, until Ocean Bank's Allowed Secured Claim is repaid in full, with interest, Attorneys' Fees and Costs. The Court shall retain jurisdiction, if applicable, to determine the appropriate amount(s) of interest, Attorneys' Fees and Costs. |
| | | Furthermore, the provisions of the Loan Documents (as defined in Ocean Bank's Claim # 2) entered into by the Debtor and Ocean Bank will remain in effect, as modified by the Plan. |
| Class 3 – Secured Claim of U.S. Small Business Administration (Second Priority Lien on Real Property) (Claim # 5) | Impaired | Class 3, the Secured Claim of the U.S. Small Business Administration ("SBA"), is impaired by this Plan. The SBA has a second priority lien on the Debtor's Real Property. The Debtor will not make any Interim Plan Payments to the SBA. Instead, no later than December 31, 2025, the Debtor shall pay all remaining indebtedness to the SBA, including without limitation, any unpaid |

| | | |
|---|---|---|
| **Total claim amount: $47,642.64 (secured = $47,642.64; general unsecured = $0.00)** | | principal and accrued interest, through either the sale or refinance of the Debtor's Real Property. The Debtor may pre-pay such amount without penalty. The applicable interest rate after the Confirmation Date shall be 5.899%.<br><br>The SBA shall retain its lien on the Debtor's Real Property until such time as the debt is fully satisfied. |
| Class 4– Secured Claim of Hialeah Gardens Commercial Association, Inc. (Condominium Association Maintenance)<br><br>**Total claim amount: $383.00 (secured = $383.00; general unsecured = $0.00)** | Unimpaired | Class 4, the Secured Claim of Hialeah Gardens Commercial Association, Inc. (the "Association"), is unimpaired by this Plan. The Debtor will continue to pay the Association pursuant to the underlying condominium association documents and applicable law, and this claim is not being modified by virtue of this Plan. |
| Class 5 - General Unsecured Creditors<br><br>**Total Estimated Allowed General Unsecured Claims: $662.39** | Unimpaired | Class 5 consists of all allowed general unsecured claims. Only one non-insider non-subordinated General Unsecured Claim has been scheduled, by Verizon Wireless, in the amount of $662.39. This claim – to the extent not already satisfied by such date - will be paid in full, in a lump sum, on the First Payment Date. Jose Barcelo has agreed to subordinate his insider claim, such that he will receive no distribution as a creditor under this Plan. |
| Class 6 - Equity Security Holders of the Debtor | Unimpaired | Class 6 consists of all allowed equity interests in the Debtor, which includes interest in any share of preferred stock, common stock or other instruments evidencing an ownership interest in the Debtor.<br><br>All Equity Security Holders of the Debtor will retain their interest(s) in the Debtor as such interest(s) existed prior to the Petition Date, with Jose Barcelo retaining a 100% stock interest. |

4.02    Unclassified Claims and interests shall be treated as follows under this Plan:

| | |
|---|---|
| Administrative Professional Fees and Costs of Debtor's Attorneys<br><br>(LSS Law and Kingcade, Garcia & McMaken, P.A.) | The administrative professional fees and costs of the Debtor's attorneys are anticipated to be $50,000.00. Kingcade, Garcia & McMaken, P.A. is currently holding the amount of $10,262.00 in its attorney trust account, as unused fee advance/retainer. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. To the extent that the Debtor has any excess monthly disposable income after payment of its normal and customary expenses and after each Interim Plan Payment to Ocean Bank, it shall pay such administrative professional fees and costs to professional administrative claimants as is feasible.<br><br>However, any unpaid fees and costs shall be paid in one lump sum due on the same date as the Final Plan Payment. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Debtor's Accountant | The administrative professional fees and costs of the Debtor's accountant are anticipated to be $10,000.00. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. To the extent that the Debtor has any excess monthly disposable income after payment of its normal and customary expenses and after |

| | |
|---|---|
| (Rolando Trujillo and Doral Accountants, LLC) | each Interim Plan Payment to Ocean Bank, it shall pay such administrative professional fees and costs to professional administrative claimants as is feasible.<br><br>However, any unpaid fees and costs shall be paid in one lump sum due on the same date as the Final Plan Payment. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |
| Administrative Professional Fees and Costs of Subchapter V Trustee<br><br>(Tarek Kirk Kiem) | The administrative professional fees and costs of the Subchapter V Trustee are anticipated to be $10,000.00. Any such fees and costs are subject to final allowance by the Court, after the filing of appropriate fee application(s) and notice and hearing. The exact amount of such fees and costs will be determined at the Confirmation Hearing of this Plan. Such fees and costs shall be paid in one lump sum due on the First Payment Date. Any administrative professional fees and costs that are incurred post-confirmation are not included herein. |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a Final Order.

5.02    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and in compliance with Fed. R. Bankr. P. 9019.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumption of Executory Contracts and Unexpired Leases. The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date: executory contract between the Debtor and U-Haul Co. of Miami, for the U-Haul Neighborhood Dealer Agreement (as listed on Schedule "G").

6.02    Rejection of Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed above, or before the Confirmation Date, upon the Effective Date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the Confirmation Date.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The means necessary for the implementation of this Plan include: (a) the Debtor's cash flow from operations through no later than December 31, 2025; and (b) the sale or refinance of the Debtor's Real Property.

As set forth above, no later than December 31, 2025, the Debtor shall pay all remaining indebtedness to Class 2 and 3 Creditors, from the sale or refinance of the Debtor's Real Property. Such sale or refinance must occur in sufficient time to repay all remaining indebtedness to Class 2 and 3 Creditors no later than December 31, 2025.

The Debtor's financial projections are attached as Exhibit "B". The Debtor's financial projections show that the Debtor will have sufficient cash over the life of the Plan to make the required Plan payments and operate its business.

To the extent that the Debtor wishes to prepay any amounts due under this Plan, the Debtor reserves the right to do so without penalty. The Debtor, as reorganized, will retain and will be re-vested in all property of the estate, excepting property which is to be sold or otherwise disposed of as provided herein and executory contracts which are rejected pursuant to this Plan. The retained property shall be used by the Debtor in the ordinary course of its business.

## ARTICLE VIII
## DISCHARGE AND EFFECT OF CONFIRMATION

8.01    Discharge.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before the Confirmation Date, to the extent specified in 11 U.S.C. § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in 11 U.S.C. § 1141(d)(6). If this Plan is confirmed under 11 U.S.C. § 1191(b), then confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in 11 U.S.C. § 1192.

The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in 11 U.S.C. § 1192; or (ii) excepted from discharge under 11 U.S.C. § 523(a), if applicable, except as provided in Fed. R. Bankr. P. Rule 4007(c).

8.02    Vesting of Assets.  Except as otherwise set forth herein or in the Confirmation Order, as of the Effective Date, the property of the estate shall vest in the Debtor free and clear of all claims, liens, encumbrances, charges and other interests, except those specifically set forth and identified in this Plan.

8.03    Binding Effect.  Except as otherwise provided in 11 U.S.C. § 1141(d)(3), on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a claim against the Debtor and its respective successors and assigns, whether or not the claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

8.04    Injunction Against Interference with Plan.  Upon the entry of the Confirmation Order, all holders of claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

8.05    Other Effect(s) of Confirmation.  If not otherwise identified herein, then the effect of confirmation of the Plan is as set forth in the Bankruptcy Code and applicable law.

## ARTICLE IX
## OTHER PROVISIONS

9.01    Disbursing Agent.  If this Plan is confirmed under 11 U.S.C. § 1191(a), then all Distributions hereunder shall be made by the Debtor, or such other individual or entity designated by the Debtor at the Confirmation Hearing, as Disbursing Agent, on or after the Effective Date or

as otherwise provided herein. If this Plan is confirmed under 11 U.S.C. § 1191(b), then all Distributions hereunder shall be made by the Subchapter V Trustee, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein, or as otherwise set forth in a Court order, including the Confirmation Order. In such instance, the Debtor shall remit to the Subchapter V Trustee, on or before the 15th day of the month prior to the month in which each Plan payment is due, the appropriate amount(s) for the Subchapter V Trustee to remit to the respective creditor(s) under this Plan.

A Disbursing Agent shall not be required to give any bond, surety or other security for the performance of his/her/its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the Debtor shall also pay all fees, costs and expenses of the Subchapter V Trustee in remitting such Distributions, if applicable. The Bankruptcy Court shall retain jurisdiction to hear any controversy relating to such fees, costs and expenses.

9.02    Subchapter V Trustee. If this Plan is confirmed under 11 U.S.C. § 1191(a), then the service of the Subchapter V Trustee shall terminate when this Plan has been substantially consummated. The Debtor shall file with the Court and serve on the Subchapter V Trustee notice of such substantial consummation not later than 14 days after the Plan is substantially consummated. If this Plan is confirmed under 11 U.S.C. § 1191(b), then the service of the Subchapter V Trustee shall terminate upon such time that the last Distribution check is negotiated.

9.03    Default of Plan Payment(s). Unless otherwise specifically set forth above, in the event of any default by the Debtor of any payment required by ¶¶ 4.01 or 4.02 above, the Claimant (or the Subchapter V Trustee, as the case may be) shall provide the Debtor with notice of such default, by electronic mail to the Debtor's attorney, Zach B. Shelomith, Esq. (at zbs@lss.law) and by U.S. Mail to Zach B. Shelomith, Esq., 2699 Stirling Rd # C401, Fort Lauderdale, FL 33312 (the "Default Notice"). The Debtor shall be afforded thirty (30) days from the date of receipt by the Debtor's counsel of such Default Notice to cure such default (the "Cure Period"), or to seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193. In the event that the Debtor does not cure a default or otherwise seek modification of the Plan post-confirmation, in accordance with 11 U.S.C. § 1193, within the Cure Period, which modification is subsequently approved by the Court, then the Debtor shall be deemed in Default of this Plan.

Pursuant to 11 U.S.C. § 1191(c)(3)(B), the condition that this Plan be fair and equitable with respect to each class of claims or interests includes, without limitation, the requirement that the Plan include "appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made". As such, if this Plan is confirmed under 11 U.S.C. § 1191(b), then in the event that the Debtor is in Default of this Plan, the Subchapter V Trustee shall provide all creditors and equity interest holders with notice of such Plan Default. In such instance, the remedies of any Claimant are limited to the remedies set forth in this paragraph. In the event of a Plan Default, then all Class 2, 3 and 4 Creditors shall be entitled to immediately foreclose on the Real Property and seek any and all *in rem* remedies that are applicable. Such Claimants will not be required to seek relief from the automatic stay prior to exercising such *in rem* remedies.

9.04    Reservation of Right to Modify Plan Post-Confirmation. The Debtor expressly reserves the right to request a modification of this Plan at any time after confirmation of the Plan, as long as such modification is in accordance with 11 U.S.C. § 1193 and any and all other

applicable sections of the Code, and as long as the Court confirms such modified plan, after notice and a hearing.

9.05   Post-Petition Interest on Claims.  Except as required by applicable bankruptcy law, post-petition interest will not accrue on or after the Effective Date on account of any Claim, unless otherwise specifically set forth in ¶¶ 4.01 or 4.02 above.

9.06   Delivery of Distributions and Undeliverable or Returned Distributions.  Subject to Fed. R. Bank. P. 9010, all Distributions to any Holder of an Allowed Claim shall be made at the Distribution Address.  In the event that any Distribution to any Holder is returned as an "Undeliverable or Returned Distribution", then no further Distributions to such Holder shall be made unless and until the Debtor is notified of such Holder's then-current address, at which time all missed Distributions shall be made to such Holder, without interest.  An "Undeliverable or Returned Distribution" shall include such distributions that are: (a) undeliverable through regular United States Mail, whether such distribution is returned to the Debtor or not; (b) returned to the Debtor because the Claimant cannot locate an account number belonging to the Debtor, despite the Debtor's reasonable diligence in providing the Claimant with the bankruptcy case number, account number and his social security number; (c) returned to the Debtor because the Claimant is no longer operating and has not provided the Debtor or the Court with any assignment information; or (d) returned to the Debtor because the Claimant indicates in writing that the Claimant does not wish to receive any Distribution under this Plan and therefore waives any right to payment.

All demands for Undeliverable or Returned Distributions shall be made on or before ninety (90) days after the date such Undeliverable or Returned Distribution was initially made.  Thereafter, the amount represented by such Undeliverable or Returned Distribution shall be permanently forfeited to the Debtor.  At such time, any Claim in respect of such Undeliverable or Returned Distribution shall be discharged and forever barred from assertion against the Debtor.

9.07   Time Bar to Cash Payments.  Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for re-issuance of any check shall be made to the Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any Claim in respect of such a voided check shall be made on or before thirty (30) days after the expiration of the one hundred and eighty (180) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be permanently forfeited to the Debtor.  At such time, any Claim in respect of such voided check shall be discharged and forever barred.

9.08   Severability.   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.09   Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

9.010   Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.011   Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of Florida govern

this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

      9.012   Corporate Governance.  Equity interests of the Debtor shall be treated as set forth in ¶ 4.01 of this Plan.  The Reorganized Debtor's president shall be Jose Barcelo.

      9.013   Post-Confirmation Operation of Business.  Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, the Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code and Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provisions of the Bankruptcy Code.  However, the Debtor shall remain in compliance with any and all applicable cash collateral order(s) through the date of the Final Plan Payment.  The Debtor shall be entitled to retain and compensate professionals without the necessity of further approval of the Court.  Except as set forth in this Plan concerning objections to claims, the Debtor may also settle or compromise any claims without Court approval.

      9.014   Exemption from Transfer Taxes.  Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments, and specifically including the sale of the Real Property, as contemplated herein, executed in connection with any of the transactions contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

This First Amended Plan of Reorganization is dated February 20, 2024 and is hereby approved by the undersigned.

                /s/ Jose Barcelo
          By:  Jose Barcelo, as President of
              M.V.J. Auto World, Inc.

Submitted by:

**LSS Law**  
2699 Stirling Rd # C401  
Ft. Lauderdale, FL 33312  
Tel. No.: 954-920-5355  
**Zach B. Shelomith, Esq.**  
**Florida Bar No.: 0122548**  
**E-Mail: zbs@lss.law**  
**Christian Somodevilla, Esq.**  
**Florida Bar No.: 59539**  
**E-Mail: cs@lss.law**  
*Co-Counsel for the Debtor*

**Kingcade, Garcia & McMaken, P.A.**  
1370 Coral Way  
Miami, FL 33145  
Tel. No.: 305-285-9100  
**Timothy S. Kingcade, Esq.**  
**Florida Bar No.: 082309**  
**E-Mail: scanner@miamibankruptcy.com**  
*Co-Counsel for the Debtor*

# Exhibit "A" – Liquidation Analysis

| **Exhibit A - Liquidation Analysis** | |
|---|---|
| | |
| **Debtor's Estimated Liquidation Value of Assets** | |
| | |
| **Assets:** | **Value** |
| | |
| Debtor in Possession Bank Account(s) | $9,346.25 |
| Office Furniture | $425.00 |
| 2007 Chevy Express Van | $2,500.00 |
| 2007 Ford E350 Van | $3,000.00 |
| Machinery and Equipment | $6,498.00 |
| 11750 NW 87 Pl # 7 and 8, Hialeah Gardens, FL 330189 | $396,855.00 |
| Avoidance Actions | $0.00 |
| | |
| **Total Assets at Liquidation Value:** | **$418,624.25** |
| | |
| **Less:** | |
| | |
| Secured creditor - Ocean Bank | $164,883.37 |
| Secured creditor - U.S. Small Business Administration | $47,642.64 |
| | |
| **Secured Claims Against Assets:** | **$212,526.01** |
| | |
| **Liquidation Value of Assets on Petition Date:** | **$206,098.24** |
| | |
| **Recovery for Unsecured Creditors in Chapter 7:** | **$662.39** |
| | |
| **Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation:** | **100.00%** |
| | |
| **Percentage of Claims Which Unsecured Creditors Would Receive or Retain under the Plan:** | **100.00%** |

# Exhibit "B" – Projected Financial Information

**M.V.J. Auto World Inc, Cash Budget Statement**
**January 2024 to December 2028**

|  | 2024 | 2025 | 2026 | 2027 | 2028 |
|---|---|---|---|---|---|
| **Revenue** | | | | | |
| Service | $103,404.24 | $103,908.59 | $104,658.25 | $105,208.25 | $105,808.01 |
| **Total Revenue** | $103,404.24 | $103,908.59 | $104,658.25 | $105,208.25 | $105,808.01 |
| **Cost of Sales** | | | | | |
| Purchases | $43,436.12 | $43,998.36 | $44,198.25 | $44,602.15 | $44,991.89 |
| Total Cost of Sales | $43,436.12 | $43,998.36 | $44,198.25 | $44,602.15 | $44,991.89 |
| **Gross Profit** | $59,968.12 | $59,910.23 | $60,460.00 | $60,606.10 | $60,816.12 |
| **Operating Expenses** | | | | | |
| Accounting | $1,320.00 | $1,320.00 | $1,320.00 | $1,320.00 | $1,320.00 |
| Auto Expense | $577.56 | $577.56 | $577.56 | $577.56 | $577.56 |
| Bank Service Charges | $24.00 | $24.00 | $24.00 | $24.00 | $24.00 |
| Marketing | $162.12 | $162.12 | $162.12 | $162.12 | $162.12 |
| Insurance | $1,312.56 | $1,312.56 | $1,312.56 | $1,312.56 | $1,312.56 |
| Licenses | $521.88 | $521.88 | $521.88 | $521.88 | $521.88 |
| Office Expense | $582.96 | $582.96 | $582.96 | $582.96 | $582.96 |
| Parking Rent | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 | $4,800.00 |
| Utilities and Waste | $867.96 | $867.96 | $867.96 | $867.96 | $867.96 |
| Telephone | $1,311.84 | $1,311.84 | $1,311.84 | $1,311.84 | $1,311.84 |
| Uniforms | $524.26 | $524.26 | $524.26 | $524.26 | $524.26 |
| **Total Operating Expenses** | $12,005.14 | $12,005.14 | $12,005.14 | $12,005.14 | $12,005.14 |
| **Net Income (Loss)** | $47,962.98 | $47,905.09 | $48,454.86 | $48,600.96 | $48,810.98 |

# Exhibit "C" – List of Creditors to be Paid Pursuant to the Plan

**M.V.J. Auto World, Inc. - List of General Unsecured Creditors to be Paid Pursuant to Plan**

**Class 6 General Unsecured Creditors:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Distribution | Initial Payment | Quarterly Payments | Comments |
|---|---|---|---|---|---|---|---|
| 5 | SCH | Verizon Wireless | $662.39 | $662.39 | $662.39 | $0.00 | Phone |
| | **Total Undisputed Unsecured Claims** | | **$662.39** | **$662.39** | **$662.39** | **$0.00** | |
| | **Distribution Percentage** | | **100.0000%** | | | | |

**Disposition of Other Claims Not Listed Above:**

| Class | Claim # | Name of Creditor | Amount of Claim | Proposed Disposition |
|---|---|---|---|---|
| 1 | 1 | State of Florida - Department of Revenue | $388.89 | Class 1 Claim - Not Impaired |
| 2 | 2 | Ocean Bank | $164,883.37 | Class 3 Claim - Allowed Secured Claim Paid in Full in Plan |
| 2 | 3 | Ocean Bank Legal Department | $0.00 | Class 3 Claim - Allowed Secured Claim Paid in Full in Plan (Claim Currently Blank) |
| 2 | 4 | Almazan Law | $5,384.06 | Class 3 Claim - Allowed Secured Claim Paid in Full in Plan |
| 3 | 5 | U.S. Small Business Administration | $47,642.64 | Class 3 Claim - Allowed Secured Claim Paid in Full in Plan |
| 4 | N/A | Hialeah Gardens Commercial Association, Inc. | $383.00 | Class 5 Claim - Not Impaired |